THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* CRESPO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for Murder in the First Degree.

No. 653.—Decided July 31, 1914.

MURDER IN FIRST DEGREE—MALICE AFORETHOUGHT—ONUS PROBANDI.—In a case of murder in the first degree the *onus probandi* that the accused killed his victim deliberately and with malice aforethought is on the prosecution.

ID.—PREMEDITATION AND DELIBERATION—EVIDENCE.—When, as in the case at bar, evidence is introduced to show that the victim carried jewelry or money; that some days before his death the accused asked permission to carry a weapon, which request was granted; that immediately after the crime the victim said nothing about his money, but only asked the first person whom he met to take care of the goods he was selling; and it being admitted that there was no other motive for the crime, it must be concluded that the fact that the accused asked permission to carry a weapon is compatible with the desire to protect his principal and himself during their travels, and that the whole evidence is compatible also with an accident or with a sudden quarrel between the two men, under which circumstances it is manifest that the elements of premeditation and deliberation have not been proven in this case.

ID.—INSTRUCTIONS TO JURY—MURDER IN SECOND DEGREE—HOMICIDE.—The fact that the trial judge in this case gave only special instructions as to the crime of murder in the first degree and not as to murder in the second degree and homicide, constitutes a fundamental error which requires the reversal of the judgment.

ID.—STATEMENT OF VICTIM—RES GESTAE—STATEMENT IN ARTÍCULO MORTIS.—
    The victim in this case charged the first person whom he met after being
    stabbed to look after his wares, but shortly afterwards said that he had
    been stabbed and, on being questioned, said that Josefino Crespo was his
    assailant. It was held that such evidence was admissible as part of the
    *res gestœ* and that the *fiscal* could not maintain on appeal that such evidence
    was admissible as a dying statement, because when the said evidence was
    objected to in the trial court the *fiscal* stated that he offered it as part of
    the *res gestœ*.

EVIDENCE—RES GESTAE.—Determining whether a part of the evidence constitutes
    a part of the *res gestœ* or not is the province of the court, and the jury
    has the right to consider that part of the evidence in conjunction with all
    the evidence introduced in the case.

ID.—INSTRUCTIONS TO JURY—CIRCUMSTANTIAL EVIDENCE.—In cases depending on
    circumstantial evidence the court should instruct the jury regarding the
    nature of such evidence, and when, as in the case at bar, only a portion of
    the evidence is of such character, the judge should explain it in his instruc-
    tions.

INSTRUCTIONS TO JURY.—The statement by the judge in his instructions to the
    jury that the accused had stood mute and had not explained to them how
    the crime was committed, constitutes a fundamental error as this might
    induce the jury to believe that it was necessary for the accused to offer
    evidence in explanation of his conduct.

The facts are stated in the opinion.

Mr. *José de J. Tizol* for the accused.

Mr. *Charles E. Foote, fiscal,* for The People.

MR. JUSTICE WOLF delivered the opinion of the court.

The information in this case reads as follows:

"The *fiscal* files an information against Josefino Crespo for the
crime of murder in the first degree, a felony committed as follows:
On or about June 17, 1912, within the jurisdiction of Río Grande,
which forms part of the judicial district of San Juan, the aforesaid
Josefino Crespo unlawfully, voluntarily, and maliciously, and in a
treacherous, deliberate, and premeditated manner, assaulted and
wounded Tomás Comas with a knife with the intention of killing
him, inflicting a deep wound in his left lumbar region and dividing
his large intestine in the lumbar colon, the curves of the small intes-
tine as well as the arteries and blood vessels of the peritoneum layer,
from which wound he died a short time thereafter. This act is con-
trary to the law in such case made and provided and against the
peace and dignity of The People of Porto Rico. (Signed) Jaime
Sifre, Assistant District *Fiscal*. The foregoing information is based
upon the testimony of witnesses who were examined under oath and

I believe there is just cause for presenting the same before the court. (Signed) Jaime Sifre, Assistant District *Fiscal.* Sworn to and signed before me this 27th day of July, 1912. (Signed) R. Díaz Collazo, Assistant Secretary of the District Court of San Juan."

After a trial before a jury the defendant was found guilty of murder in the first degree and was sentenced to be hanged.

The appellant assigns nine grounds of error. In none of them is the attention of this court directly drawn to the fundamental error in the case, although such error is suggested in the appellant's discussion of the court's instructions. The fundamental error in the case is the failure of the evidence to make out a case of murder in the first degree. The proof is as follows:

"*Tomás Cardona* testified that on June 17 he was working on the farm of Nicolás García, in the ward of Sabana of Río Grande, when between 7 and 8 o'clock a. m. he saw Tomás Comas pass by, at a distance of about two or three *cuerdas,* carrying a valise. He was accompanied by another person, whom the witness did not know, and the said person was also carrying a valise.

"*Dolores Rivera* testified that about June 17, in the morning, he was working on the farm of Nicolás García, in the ward of Sabana of Río Grande, with Tomás Cardona, when between 7 and 8 o'clock he saw Tomás Comas pass by accompanied by a young white man of medium size, whom he did not know but whom he identified later. Pointing to the defendant, the witness answered the *fiscal* that he thought that was the person who accompanied Tomás Comas; that he looked like him. That they were walking along, one carrying a basket and the other a valise; that on the day on which Tomás Comas passed by with that other person Tomás Comas was killed in that ward and that he remembers that day.

"*Jesús Mercado, Senior,* testified that in the month of June he lived on the property of Nicolas García in the ward of Sabana of Río Grande, near Luquillo, where he was working with one of his sons, Jesús Mercado, Junior. That while he was working he heard a loud cry of 'Ay!' which he thought was uttered by some person who had fallen from a bread-fruit tree, the cry having come from near the bread-fruit tree; that he sent his son to see what had happened; that later he went to his son and there found his son and

Tomás Comas sitting on the bed, and after he had asked the witness' wife for a glass of water he fell back and died there from a knife-thrust which had been given him from behind; that he knows Josefino Crespo who was taken to the house of Nicolás García and held there until the police arrived; that he saw the knife with which Comas was wounded, and it was a large knife and covered with blood.

"*Jesús Mercado, Junior,* testified that in the month of June he was living in the ward of Sabana; that on the morning of the 17th of the said month he went out to work with his father on the farm of Nicolás García and somewhere between 8 and 9 o'clock in the morning he heard some cries, and he said to his father, 'Papa, listen to what is going on,' and his father sent him to the house because he believed that it was his sister who had fallen from the tree, and upon arriving at the house he found his young sister crying, and she said to him that Tomás Comas had come there wounded; that Tomás Comas was on his mother's cot; that Nicolás García ordered him to catch a horse and go to the village or town to tell about what had happened; that when he went to catch the horse he heard a noise in some bushes and he saw a person going along without a hat, and he went toward him and caught hold of him and asked him what his name was, he replying 'Josefino'; that then he told him he was going to take him to the house because the dead man had said that Josefino had killed him; that Nicolás García then came along and the two of them took Josefino up to the house. Upon being asked by the *fiscal* whether the person referred to was in the court-room, he answered 'Yes' and pointed to the defendant. That when the witness arrived at the house Tomás Comas had already died. Upon being asked whether the defendant said anything to him to the effect that he was not the person who committed the act, he replied that the defendant tried to get away and said, 'Let me go, I am not the person.' That about 20 or 25 days after the act was committed the sheath of the knife was found where it had been hidden in the hills and also a little book which had some letters in it and was covered with dirt, and he delivered it to the owner of the property. The sheath being shown him, he identified it. That before the act was committed he had seen Josefino Crespo walking with Tomás Comas; that his mother told him that the deceased had declared to her before he died that Josefino had killed him.

"*Nicolás García* testified that about the month of June he was living in the town of Luquillo and had a farm in Sabana; that Tomás Cardona, Dolores Rivera, Jesús Mercado, Sr., and Jesús Mercado, Jr., are peons of his; that on June 17 while he was walking around

his farm he heard a cry of 'Ay, aunt! I'm killed; they have given me a knife-thrust. Ay, aunt! come quickly.' That he looked and saw a person running up by the wire fence toward the mountain, and when the witness arrived at the house he found Tomás Comas on a cot and he had a knife wound in his back from which blood was flowing. That Tomás Comas was a peddler and took Josefino, the accused, with him as his *peón;* that upon arriving at the house Tomás Comas, who was already in a dying condition, told him in the presence of the woman of the house and himself that his *peón,* Josefino Crespo, had wounded him, and then in three or four minutes he died; that he went at once to look for the person whom he had seen run toward the mountain and found Jesús Mercado holding Josefino Crespo, who resisted, and they took him to the house, he being violent and trying to escape. That when the witness arrived at the house he found a knife on top of the valise and took charge of it, delivering the valise to the woman to take care of it; that when he arrived where Josefino Crespo was the latter told him that he was not the one who had wounded Tomás Comas; that he was running after the person who had done so, the person being a negro who had a handkerchief around his head. That when they took Josefino Crespo to the house where Tomás Comas was he took the dead man's hat, saying that it was his, and witness told him it was not, and later Crespo's hat was found near a stake in the ground; that it was a felt hat. Witness identified the hat which Josefino Crespo wore and a knife which had a black handle; that when he saw the knife in the house it was covered with filth up to the handle; that when he arrived at the house and found the wounded man the latter said to him, 'Don Nicolás, Josefino Crespo, my companion, stuck a knife in me,' and at that moment he was conscious but died immediately; that before the deed was committed he had seen Josefino Crespo in the town with Comas; *that between the time when he heard the cry and the time he arrived at the house and found Tomás Comas there about three or four minutes transpired, the place where the refuse from the house was being about one cuerda's distance.* The witness identified the pair of trousers which was shown him as the same trousers which Josefino Crespo wore on the day of the crime and pointed out the place where they had a smear of filth, which trousers the *fiscal* offered in evidence in order to corroborate the testimony of the witness, and to show that after he had stabbed the victim he wiped the knife on the trousers.

"*Monserrate Comas* testified that he is an Insular policeman; that Tomás Comas was his brother and that he knows Josefino Crespo.

who for some time had been the *peón* of his brother, who was a ped-
dler; that along about the first of the month of June or the last of
the month of May, 1912, his brother carried a knife and a revolver,
which he thought was a bull-dog revolver, and the knife, a long one
with a black handle, which article he carried in the basket; that
one night, when the witness was not yet an Insular policeman, his
brother came to him in his house and asked him to count some money—
about $1,500—and then Josefino Crespo asked him for one of the
weapons, telling him that he did not need two, and his brother replied,
'Take whichever you like. You may take the knife or the revolver,
just as you choose,' and Josefino Crespo said, 'I prefer the knife.'
That this incident about the knife occurred about ten or twelve days
before the crime. The *fiscal* showed the knife to the witness and he
identified it. That the said weapon was given to Josefino Crespo
by his brother in the presence of the witness; that the reason his
brother got him to count the $1,500 was, as he said, 'You have been
working such a long time, are you still poor?' and he replied, 'No,
I have some money.' Then the witness said 'About how much money
have you?' and he replied, 'Count it,' and he counted it. That he car-
ried the money in a package in one of his pockets, and he always car-
ried the money wherever he went; that it appears that his brother
was in love with Josefino's sister and that due to this circumstance
he had employed Josefino, whom he had told on two or three occa-
sions that he did not need him; that prior to this time Josefino and
his brother had had some quarrels but they had passed off; that Jose-
fino invited his brother to go out with him several nights, but as his
brother carried that amount of money he did not care to go out at
night; that when his brother died the witness was a policeman in
Juncos and that he had not been able to find the $1,500 because the
accused was more than a quarter of an hour on the mountain and
had time to hide it.

"*Carlota Mercado* testified that she lives in Luquillo; that in the
month of June she lived in Sabana; that she knew Tomás Comas
who formerly was a laborer and later a peddler; that she knew Jose-
fino Crespo by sight. Upon being asked whether the person who ac-
companied Tomás Comas was present, she replied affirmatively and
pointed to the accused; that what had happened on June 17 was
that Tomás Comas was killed; that the witness being in her house
looked out of the window between 8 and 9 in the morning because
she heard loud cries of 'Ay! ay!'; that she looked and saw Tomás
Comas coming running, who saw her and said, 'Come! take this knife
and carry it to your house and go get the pack of notions which is

under the bread-fruit tree; that the witness took the knife and went to the bread-fruit tree to get the notions, and found there the valise which had some filth on it; that she brought it to the house and when she got there Tomás Comas had died; that she took only a very short time to return with the valise because the place between where the valise was and the house was only about a *cuerda's* distance; that she put the knife on top of the valise; that it was a long knife with a black handle, and was covered with blood and filth; that she did not see the wound and did not know where it was, and that Tomás Comas died from the knife-thrust which was given him; that she saw Josefino Crespo in the house that same day when her brother and Don Nicolás brought him there.

"*Fabriciana Robles* testified that she lives in the ward of Sabana of Río Grande; that Carmen Mercado and Carlota are her daughters; that on the 17th of June, when she was away from the house at a brook, she heard cries in her house and on coming back saw that it was Tomás Comas; that she asked what had happened to him and he said that he had been stabbed, and then she asked him who had done it and he replied that Josefino Crespo, his assistant; that Comas went into the room and laid down on the bed and died there immediately after saying that Josefino Crespo was the one who had stabbed him; that Tomás Comas showed her the wound and when he had made the statement to her there was nobody present but Nicolás García and herself; that she saw Josefino Crespo when they brought him to the house; that the deceased called her 'aunt' and as he did not see her in the house he called for his aunt, saying 'Ay! ay! I have been stabbed'; that she saw the knife, which was a long one with a black handle, and she identified it when shown it by the *fiscal*.

"*Carlos García de la Noceda* testified that he is the municipal judge of Río Grande; that on one of the days of the month of June he went to Luquillo, it being the same day on which the crime was committed, and he saw Josefino Crespo; that he did not notice anything about his clothing which attracted his attention, but he did notice on a pair of trousers some filth, pointing to the place where he saw it; that the witness took charge of the property of Comas.

"*Dr. Miguel Veve* testified that he is a physician and surgeon; that he knows Tomás Comas and his family; that about June 17 or 18 he had occasion to attend Tomás Comas, who did not show any extra signs of violence, not even the slightest scratch, but he died of a wound on the left side made by a sharp instrument, the wound being quite large; that the stab was undoubtedly toward the front and the instrument was quite long, from 9 to 10 centimeters; that

the weapon cut the colon on its external margin and severed the intes-
tines in different places, causing innumerable incisions and at the
same time a rupture of the veins, producing an internal hemorrhage,
which could not be avoided because the wound was in the thickest
arterial section; that Tomás Comas died of the wound thus received;
that when Tomás Comas received the wound he must have been on
the same level as the aggressor, for it cannot be explained otherwise;
also, both Tomás Comas and the aggressor must have occupied crouch-
ing positions, the latter inclined forward; that a person may walk
along for ten minutes with such a wound and go a distance of one
*cuerda,* being able to speak at the same time, as the hemorrhage would
proceed very slowly; that it would be all the more reasonable for
him to be able to walk and talk for a distance of one *cuerda* if it
were true, as said in this case, that the knife was left in the wound;
that Tomás had a strong constitution and could retain his mental
faculties up to the moment of his death; that this kind of a wound
would not produce unconsciousness, but, on the contrary, the brain
would remain entirely clear.

"*Celina Mercado* testified that in the month of June she lived in
the house of Nicolás García; that she knows Tomás Comas and Jose-
fino Crespo who went together; that on the said 17th day of June
Tomás Comas arrived at her house wounded and the witness went to
call her mother who was washing clothes in the brook; that when
Tomás Comas arrived at the house he was screaming and carried
a knife which he gave to her sister Carlota. A knife being shown
to the witness, she said it was the same one which Tomás carried in
his hand. That from the time she saw Comas to when she returned
from calling her mother was about ten minutes. That when Comas
said to her mother that it was Josefino Crespo who had stabbed him
there was no one present but her mother and herself, and that between
the time when Comas made this statement and the time he died was
about ten minutes."

From this recital of the proof the following facts appear,
namely:

That Tomás Comas was killed by a knife-thrust at the
hands of Josefino Crespo, the defendant. It is unnecessary
to recite the individual data from which this conclusion is
arrived at because it is the ultimate fact in the case, and in
considering as we shall whether the proof is sufficient, like
a demurrer to the evidence, all the evidence of the *fiscal* must

be given full force, and, as it happens, there was no other evidence in the case.

It being clearly shown that Comas was killed by Crespo, the burden of proof was cast upon the Government to show that Josefino Crespo deliberately, and with malice aforethought, killed Tomás Comas. When Crespo was caught by the two men he was hiding, and said, "Let me go; I am not the person." There was testimony tending to show that Comas carried treasure or money. There was also proof that some ten or twelve days before the death of Comas Crespo asked that he be allowed also to carry a weapon, which request was granted, and he chose the knife. Now, the request for a weapon on the part of Crespo was perfectly consistent with the desire to protect himself and his master on their trips, Crespo being the servant of Comas. There was not the slightest proof of any attempt on the part of Crespo to get possession of any part of the money carried by Comas, and it is admitted that no other motive for the crime existed. And the evidence shows that Comas, immediately after the crime, gave no thought to his treasure or money, but asked the first person he met to look after the notions, the stock in trade which he was selling and from which he obtained a livelihood. The whole proof is perfectly consistent with an accident or sudden quarrel between the two men. We do not discuss the evidence at greater length because we think it is evident to the mind that the elements of premeditation or deliberation have not been shown in this case.

In his eighth assignment of error the appellant maintains that the court should have instructed the jury with regard to the degrees of crime other than murder in the first degree, the judge's instructions having related solely to murder in the first degree. It is true, as pointed out by the *fiscal* in various parts of his brief, that no specific instructions were

asked on the part of the defendant, but this court, following the Code of Criminal Procedure, has never hesitated to examine the instructions to find if any fundamental error has been committed. We think that there was a fundamental error in not giving instructions with regard to murder in the second degree and also with regard to homicide. We do not know exactly what the theory of the judge below was with regard to deliberation or premeditation. There may have been some elements that appealed to his mind as showing such deliberation or premeditation, but we think it is clear that there was room for doubt as to murder in the first degree by reason of nobody having the slightest idea of what took place between the two men while they were in the mountain alone. Under any veiw of the case, given the somewhat singular circumstances of the death, the defendant was entitled to instructions with regard to the lower degrees of the crime.

A good deal of the legal struggle in this case has been over the question of whether the statements made by Tomás Comas very shortly before his death were admissible in evidence. The *fiscal* maintains that such statements were admissible either as part of the *res gestæ* or as a dying declaration. We do not think the *fiscal* should be heard in this court to say that this evidence was admissible as a dying declaration, because when the defendant made his objection to the evidence as hearsay the *fiscal* said he was offering it as part of the *res gestæ*. We think the *fiscal* urges with some show of reason that the objected evidence was admissible as part of the *res gestæ*. It is true that Comas directed the first person he met after the stabbing to go and look for the notions, but very shortly thereafter he said that he had been stabbed, and upon being asked, he said that Josefino Crespo had stabbed him. We see no error in the admission of this evidence. Perhaps if the defendant had requested it, the court might have given the instructions in regard to

what was properly *res gestæ* in the case. Otherwise, as the *fiscal* maintains, the question of whether a particular piece of evidence is *res gestæ* or not is for the court, and the jury is entitled to consider the particular testimony along with all the other proof in the case. The statements and outcries of the dying man, given in such close connection with the main event, had all the marks of spontaneity, and, as we have stated, were properly admissible.

We agree with the appellant that in a case dependent upon circumstantial evidence the court should give an instruction as to the nature of circumstantial evidence and the *fiscal* agrees with this conclusion. He maintains, however, that only part of the proof was circumstantial. The court, on the other hand, alluded to the proof as being circumstantial, leaving it open to doubt whether he was not referring to the whole of it, and hence we think that an instruction with regard to the nature of circumstantial evidence was proper, if not necessary.

We believe, also, that the instruction of the court to the jury to the effect that the only evidence was for the prosecution because the defendant had not testified nor explained to the jury how the crime was committed, could not lead the jury into the error of believing that it was necessary that the accused must introduce evidence explanatory of his conduct; and although the court instructed the jury later that the silence of the accused should not be construed as presumptive of his guilt, yet if the jury arrived at the conclusion from the instructions that the accused was bound to explain the occurrence, the injury was done and therefore we must conclude that that part of the instructions was at least misleading and capable of leading the jury into error.

We have discussed the errors assigned by the appellant neither in the order named nor exactly as raised, but we have covered substantially the errors with the exception of one or two which were not prejudicial and would not be likely to recur at a new trial.

For the errors indicated and principally because the case fails to show murder in the first degree, the judgment must be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.